## KENNEDY v. DUNLAP.

Eastern Section.   August 27, 1932.

Petition for Certiorari denied by Supreme Court, January 21, 1933.

Brown & Johnson, of Maryville, for appellant.
Gamble, Crawford & Goddard, of Maryville, for appellees.

PORTRUM, J.   In this case the determinative question is one of fact.   The issues present these questions, first, is the complainant entitled to a judgment against the principal defendant?   Second, if so, is he also entitled to enforce a vendor's lien against the house and lot, which had previously been conveyed by the principal defendant to a third party?   The amount involved is less than $1000, and represents the balance due of the purchase money for about nine acres of land sold by the complainant to the defendant prior to 1925; the original bill was filed in July, 1925, to collect these purchase money notes, and since that time the cause has been pending, and there have been several sales of the property in an attempt to realize the purchase money.   The cause is before us upon a designated record, but a sufficient record to present the issues here. We cannot undertake to give a detailed historical statement of this litigation, and we will content ourselves by stating only pertinent facts necessary to present, and illustrate the issues presented here.

In March, 1918, S. H. Kennedy and wife, Minnie M. Kennedy, the complainants, sold W. A. Dunlap, a defendant, a tract of land located in Maryville, Tennessee, containing eight and one-half acres more or less, and for the deferred payments the defendant Dunlap executed four notes of $1000 each, due and payable one, two, three and four years from date, and a fifth note for $1500, due five years from date, with interest from date, and secured by the vendor's lien.

Soon after the purchase of this property, the defendant Dun-

lap sold a part of the premises to one M. F. Atchley, consisting of about one-half acre, and upon which was located a building, with a covenant against encumbrance; and Atchley sold this house and lot to D. E. Lowery and Frank Lowery, free from encumbrance.

And at a later date defendant Dunlap sold the balance of this tract of land to J. L. Lambert, who assumed, as a part of the purchase price, the notes due to Kennedy, and secured by a vendor's lien.

The three notes first maturing were paid and discharged, but default was made in the payment of the fourth and fifth notes; so in July, 1925, the complainant Kennedy, joining with this wife, filed his bill to collect the notes and enforce the vendor's lien. Dunlap, the original vendee, and his vendees, Lambert, and the two Lowerys, were made defendants. The bill alleged the sale of the land to Dunlap, and the execution of the notes and their default, and prayed for a judgment and an enforcement of the vendor's lien. It also alleged that the complainant was informed that Dunlap had transferred the land to his codefendants. Dunlap answered and admitted the sale of the land to Lambert, and the house and lot to Atchley, who in turn had transferred it to the two named Lowerys. He filed a cross-bill against Lambert, seeking to require him to pay the balance due on the purchase price; and he then stated that if it became necessary to sell the boundary of land to enforce the lien, that the sale be made in two parcels in order to protect the Lowerys, and that the Lowery lot be last sold to pay any deficiency in the purchase price after the sale of the tract owned by Lambert. The Lowery defendants did not answer the bill, and a pro confesso was taken against them; but their codefendant and vendor, Dunlap, was making the defense for them, and in protection of his covenant against encumbrance.

In due time a judgment was entered in favor of the complainant and against the defendant Dunlap for the sum of $3351.25, representing the amount due on his purchase money notes, and an order of sale was entered, directing the clerk to advertise and sell the property, first by selling that portion owned by J. L. Lambert, and if this property did not bring a sufficient amount to pay the indebtedness, then the clerk would sell the house and lot owned by D. E. Lowery and Frank Lowery, and which was purchased through Atchley.

In obedience to this order the clerk advertised and exposed the property to sale, by selling the portion conveyed to the defendant Lambert, when the defendant Dunlap became the purchaser at the sum of $3401.51. But before the sale was confirmed the defendant J. L. Lambert raised the bid ten per cent, or the sum of $340.15, and gave as security Sam T. Broyles. At the next term of the court the security, Broyles, applied to the Court to be released of

his suretyship, having become dissatisfied with his agreement; the Court declined to release him, and necessarily this new bid released Dunlap and his personal security from his bid.

To remove this difficulty the complainant Kennedy, acting through his attorneys, Dunlap and Lambert entered into a verbal agreement, the terms of which were not reduced to writing, nor reflected in the subsequent decree, whereby it is agreed that Lambert and his surety, Sam T. Broyles, should become the purchaser at Dunlap's bid, and that Dunlap should pay in cash the balance due on the judgment, together with the cost of the cause, and Dunlap insists that it was a part of this agreement that he should be released from any further liability upon the judgment of the payment of the stated sum. This is the disputed question of fact. Of course, if Dunlap was relieved of further liability upon the judgment, then the vendor's lien resting against the house and lot of the Lowerys could not be enforced to satisfy Dunlap's liability. Because of the agreement the clerk made no sale of the Lowerys' house and lot, but reported a sale of the first tract to the purchaser, J. L. Lambert, and his security, at Dunlap's bid of $3401.51, and made no mention of the agreement, or his reason for not exposing the remainder of the tract, or the Lowerys' house and lot, to sale in satisfaction of the balance due on the judgment. A signed, agreed decree was entered confirming this sale, but the decree sets out none of the terms of the oral agreement, nor makes any provision for the payment of the balance due on the judgment. But Dunlap paid into court this balance, or $606, which was paid out to the complainant.

The defendants, D. E. Lowery and Frank Lowery, were not parties to this agreed decree and no counsel signing as their representative.

When the first of the purchase money notes under the clerk's sale became due, one, B. E. Washington, made it appear to the Court that he had purchased the property from J. L. Lambert, at the same price that Lambert had purchased it at the Court's sale, but extended a part of the purchase money for six months, that he, in the place of three notes due six, twelve and eighteen months, he gave four notes due in six, twelve and twenty-four months. And he stated that since his vendor, Lambert, was in the hands of a receiver, in the courts, he desired a ratification of his purchase by the Court. A decree was then entered ratifying this sale to Washington, and directed that his purchase money notes be collected by the Clerk and Master, and when paid that the Lambert notes be turned over to him. This decree also provided that the complainant Kennedy's rights against Lambert and his purchase money notes, secured by the vendor's lien, be in no way impaired. This decree was approved by complainant Kennedy's counsel.

Washington made two payments of about $600 on his purchase, and defaulted. After this default, in October, 1927, Kennedy, by his counsel, appeared in open court, ignoring the Washington sale, and presented the Lambert notes in open court and prayed for judgment, which was granted against Lambert and his surety, and the Lambert portion of the land was ordered sold in satisfaction of this judgment. At this time the last of the Lambert notes was not due, and no judgment was taken on this note. An order of sale was entered to satisfy this judgment.

The land was again offered for sale when Dunlap again purchased it for the price of $1000; later the complainant Kennedy's counsel, Judge Sam Johnson, raised the bid to the sum of $1800, and the sale was confirmed to him at this price.

When the last of the Lambert notes became due, the complainant, through his counsel, presented the note in open court and procured a judgment against the maker and his surety, and was granted an execution. At this time the maker, Lambert, was being wound up in Chancery Court as insolvent, and the complainant's counsel was his trustee. And Lambert's surety, Sam T. Broyles, was a bankrupt, and his affairs were being wound up in the Bankruptcy Court. Upon this state of affairs there was nothing to be made upon an execution by a levy, and the sheriff returned the execution unsatisfied. The complainant Kennedy did not file his claim in the insolvency proceeding in the Chancery Court, nor against Broyles in the bankruptcy proceeding.

In September, 1929, the complainant Kennedy appeared in open court and presented a decree reciting the history of this litigation, and reviving the first decree of sale, so as to order a sale of the Lowery house and lot in satisfaction of the amount unpaid of the original judgment. This reviver, and order of sale, was entered without the knowledge of Dunlap, who later moved the Court to vacate the decree and permit him to file a petition alleging facts that had occurred since the entry of the original decree. This decree was vacated, and the petition permitted to be filed. This petition set up and relied upon the oral agreement above mentioned, and Kennedy answered it, denying the agreement. Proof was taken upon this issue, and the Chancellor was of the opinion, and found as a fact, that the agreement was established and by its terms defendant Dunlap was relieved of further liability upon the judgment taken against him, by the payment of the balance due into court after the agreed sale to Lambert. He was further of the opinion that complainant Kennedy was estopped to assert a sale against the Lowery property, or to claim judgment against Dunlap. From this decree Kennedy has appealed.

If the agreement is established, as found by the Chancellor, then the personal liability of Dunlap upon the original judgment, rest-

ing upon the original purchase money notes, has been satisfied, and the lien securing these notes and this judgment no longer exists. But if the agreement is not established the parties so dealt with the Lowery interests, without his consent of record, as to estop the complainant to assert this lien against the house and lot. In the first place the complainant Kennedy released Lambert and his surety from the raised bid, or the sum of $340, which would have inured directly to the benefit of the Lowerys. The Lowerys were not a party to this arrangement, and the able array of learned counsel who appeared in this case knew they could not deal with the Lowery interests without the Lowerys' consent, therefore, they undoubtedly made an agreement that would protect the Lowery interests, and leave the Lowerys unconcerned in the arrangement. We think this fact is a strong corroborating circumstance in favor of the contention made by the defendant Dunlap. And again, under these circumstances, it was the duty of the complainant Kennedy to exhaust his remedies against Lambert and his surety, and also against Washington, since he had agreed to Washington's purchase by signing the decree through his counsel, before attempting to sell the Lowery property in satisfaction of the amount due from Washington and Lambert, and his surety. Kennedy ignored the purchase of Washington, and the decree vesting the title in Washington, but produced Lambert's purchase notes in court and asked for a sale of the property as if it were Lambert's property, on the theory that the reservation in the Washington decree permitted him to do this. We think this reservation protected his rights against Lambert and his surety only after he had exhausted his remedy against Washington. Washington was the owner of the legal title and Lambert had the right to insist that the property be sold as Washington's, and Washington be required to pay the deficiency in order to protect Lambert. The Lowerys have a right to insist that the remedy against Washington be exhausted, before they are called upon to answer for the original default. And Dunlap has a right to insist that the remedy against Lambert and his surety, Broyles, be exhausted before he is called upon to answer; an execution did not answer this purpose, under the circumstances, and exhaust the remedy, for Kennedy should have filed his claim in the insolvency proceeding of both defendants, and perhaps realize something for the protection of Dunlap.

Upon this record the complainant has no right to a sale of the Lowery property for the satisfaction of the balance due on his claim.

Is the complainant entitled to a judgment against the original purchaser, Dunlap, for the balance due, or an execution upon the original judgment for the balance due? If Dunlap has established his agreement then the complainant is not. Upon this issue the

defendant Dunlap testified, and he called as his witness the Clerk
and Master, Mr. Joe Gamble. The proof is meagre, but Dunlap
stated that it was agreed Lambert and his surety should take his
bid, and be released of the raised bid, and that he should pay the
balance due on the judgment and cost and be relieved of further
liability. He was asked:

"What was agreed about further liability on your part in
the matter? A. I understood I was released.

"Q. Then it was that you agreed, so far as you were con-
cerned, he could drop down and take your bid? A. Yes, he
could take my bid and I would pay the balance on the judg-
ment and the cost, so I could be released."

The Clerk and Master was asked:

"Was it a part of that agreement at that time that Mr. Dun-
lap must pay that amount of money if he was to be released
from further liability and the cost? A. Of course, I don't
know the agreement, but that was my understanding. I didn't
have anything to do with the agreement."

The complainant Kennedy was the only witness introduced upon
this issue in his behalf. He testified that he was not present and
did not make an agreement, that the parties came to him and he
referred them to his counsel who had the matter in charge, and de-
clined to discuss it with them. There was an agreement made by
Kennedy's counsel, and on Kennedy's behalf, for the Clerk and
Master says he would not have accepted the lower bid without
the consent of Kennedy; and Kennedy's counsel signed the decree.
We have here the evidence of two witnesses who state that Dunlap
was to be relieved of further liability when he paid the balance
due upon the judgment and cost, after the confirmation of the sale
of the land to Dunlap. There is no evidence whatsoever disputing
his testimony, and the complainant could have called his counsel
who made this agreement and shown by him what the terms of
the agreement were.

The complainant through his counsel makes an able argument
in this court, and insists that what Kennedy did was done for the
accommodation of Dunlap, and his vendees, the Lowerys. It is
said on his behalf:

"We think that no doubt under the rules of equity Dunlap
should not be allowed to sell property on which purchase money
notes are outstanding, and then take favors from the man he
owes the money, then try to take advantage of the man who
favors him and cause him to lose money."

Argument, however convincing, cannot take the place of proof,
Kennedy may have thought he was accommodating the Lowerys,
and was, but the Court would have rendered this accommodation
had he declined to. If Kennedy solemnly agreed, as the proof

shows, to then accept in cash $600 in full satisfaction of his claim against Dunlap, he has no right to repudiate his agreement because of the subsequent insolvency of the parties, and rely upon accommodating acts of his to overturn the agreement. This Court is confronted by the evidence of two men upon an issue, and no evidence to the contrary. It can do nothing but concur in the findings of fact as found by the Chancellor, and affirm the judgment with cost.

Snodgrass and Thompson, JJ., concur.